UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN MICHAEL MILLER,

                    Plaintiff,

Case # 14-CV-6366-FPG

v.

DECISION & ORDER

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

## INTRODUCTION

Plaintiff John Michael Miller ("Plaintiff") brings this action in order to challenge the final decision of the Acting Commissioner of Social Security ("the Commissioner") which denied Plaintiff's application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Title II and Title XVI of the Social Security Act ("the Act"). ECF No. 1. The Court has jurisdiction over this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 6, 7. For the reasons stated below, the Commissioner's Motion is granted and Plaintiff's Motion is denied.

## BACKGROUND

On October 27, 2011, Plaintiff filed concurrent applications for SSI and DIB. Tr.[1] 128-131, 132-37. After these applications were denied at the initial administrative level, a hearing was held before Administrative Law Judge Milagros Farnes ("the ALJ") on December 3, 2012 in which the ALJ presided by videoconference and considered Plaintiff's application *de novo*. Tr.

---

[1] References to "Tr." are to the administrative record in this matter.

32-58. At the hearing, Plaintiff appeared with a representative and testified. *Id.* A Vocational Expert named Abbe May ("Vocational Expert") also testified. *Id.* On January 25, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. Tr. 13-29. That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 2, 2014. Tr. 1-6.

## LEGAL STANDARD

### I. Disability Determination

Social Security Administration regulations outline the five-step process used to determine whether a claimant is "disabled" under the Act. 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe" impairment or combination of impairments. Third, if the claimant does have a severe impairment, the Commissioner must determine whether it meets or equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("the Listings"). If it does, then the claimant is deemed to be disabled. If it does not, the Commissioner will make a finding regarding the claimant's residual functional capacity ("RFC"), which is then used in the fourth and fifth inquiries. The fourth inquiry is whether, given the claimant's RFC, the claimant can still perform his past relevant work. Fifth, if the claimant cannot perform his past relevant work, the Commissioner must consider the claimant's RFC as well as his age, education, and work experience to determine whether the claimant can make an adjustment to other work for which there are a significant number of jobs in the national economy. The burden of proving the first four elements is on the claimant, and the burden of proving the fifth element is on the Commissioner. *Bush v. Shalala*, 94 F.3d 40, 44-45 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## II. District Court Review

District Court review of the Commissioner's decision is not *de novo*. *See, e.g., Richardson v. Barnhart*, 443 F. Supp. 2d 411, 416 (W.D.N.Y. 2006) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). The Commissioner's decision may only be set aside if it is not supported by "substantial evidence" or is the product of legal error. *See, e.g., Miller v. Colvin*, 85 F. Supp. 3d 742, 749 (W.D.N.Y. 2015); *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)). Substantial evidence means "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess*, 537 F.3d at 127 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)) (internal quotation marks omitted).

# DISCUSSION

## I. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 21, 2011, his alleged onset date. Tr. 18.

At step two, the ALJ found that Plaintiff had the following severe impairments: alcohol abuse and dependence, in remission; anxiety disorder; back pain due to muscle spasm; bipolar disorder; Crohn's disease; depressive disorder; hyperlipidemia; major depressive disorder, with psychotic features; polysubstance abuse and dependence, in remission; shizoaffective disorder; and tobacco abuse. Tr. 18.

At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal any impairment in the Listings. Tr. 19-20.

The ALJ then determined that Plaintiff retained the RFC to perform a full range of light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), but with the following non-exertional limitations: no production or pace work, no interaction with the public, only occasional

interaction with co-workers, low stress environment, only occasional decision-making, must be able to remain off-task up to 10 percent of the workweek due to unexpected breaks caused by Crohn's disease, and requires reminders of work tasks up to one time per day. Tr. 20-24.

At step four, the ALJ relied on testimony of the Vocational Expert and found that, given Plaintiff's RFC, Plaintiff is unable to perform his past relevant work. Tr. 24.

At step five, the ALJ relied on testimony of the Vocational Expert and found that, given Plaintiff's RFC as well as his age, education, and work experience, Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy.[2] Tr. 25-26. As a result, the ALJ concluded that Plaintiff is not "disabled" under the Act. Tr. 26.

## II. Plaintiff's Challenges

Plaintiff raises three challenges to the ALJ's decision: (1) the ALJ failed to properly evaluate and assign weight to the opinion evidence in the record; (2) the ALJ erred in evaluating Plaintiff's subjective complaints and determining Plaintiff's credibility; and (3) the ALJ's determination at step five was erroneous because the ALJ relied on the Vocational Expert's response to flawed hypothetical questions. ECF No. 6. These arguments are addressed in turn.

### 1. Opinion Evidence

Plaintiff first argues that the ALJ failed to properly evaluate and assign weight to the opinion evidence in the record. ECF No. 6, at 10-13. Specifically, Plaintiff takes issue with the way the ALJ handled the opinions of: Plaintiff's therapist Rebecca O'Neill, LMSW ("O'Neill"); Plaintiff's physician Kathleen Donahue, M.D. ("Dr. Donahue"); and consultative psychologist Alan Dubro, P.H.D. ("Dr. Dubro"). Id.

---

[2] Specifically, the Vocational Expert testified that Plaintiff could perform the following jobs: mailroom clerk, laundry worker, and collator.

4

### a) O'Neill

O'Neill served as Plaintiff's therapist during the relevant time period and met with Plaintiff on a regular basis. In addition to O'Neill's treatment notes, the record includes two forms filled out by O'Neill in which O'Neill provides her opinion about Plaintiff's functional limitations and ability to work: a Psychological Assessment for Determination of Employability form filled out on January 19, 2012 for the Monroe County Department of Human Services ("January 2012 Opinion") and a Medical Source Statement of Ability to do Work-Related Activities (Mental) form filled out on November 2, 2012 for the Social Security Administration ("November 2012 Opinion"[3]). Tr. 295, 359.

In determining Plaintiff's RFC, the ALJ assigned "significant weight" to O'Neill's January 2012 Opinion. Tr. 24. With respect to O'Neill's November 2012 Opinion, however, the ALJ assigned it "only probative weight . . . because it is inconsistent with her prior statement and the treatment notes pertaining to claimant's mental health treatment. While the claimant's conditions cause a mild to moderate degree of restriction in his ability to function, his conditions are not such to warrant 'extreme' and 'marked' limitations in nearly all forms of mental activity, as reported by Ms. O'Neill in the November 2012 medical source statement." *Id.*

Plaintiff argues that the ALJ improperly "substitutes her own medical opinion" when assigning less weight to O'Neill's November 2012 Opinion. ECF No. 6, at 12. To the extent Plaintiff is arguing that O'Neill's November 2012 Opinion is entitled to controlling weight, Plaintiff has misstated the law. It is true that the opinion of a "treating source" must be given controlling weight if the opinion is well-supported by acceptable techniques and not inconsistent

---

[3] The November 2012 Opinion is also signed by Joann Streb, N.P. ("Streb"), who met with Plaintiff regularly in order to review Plaintiff's medications. Tr. 361. Underneath Streb's signature line is the handwritten label "physician / psychiatrist." *Id.* However, to the right of the signature is a stamp that says "Joann Streb, NP." *Id.* Plaintiff refers to Streb as a nurse practitioner in his Motion, and does not argue that she is a physician or psychiatrist. ECF No. 6, at 12. Plaintiff also does not argue that some other physician or psychiatrist actually signed the November 2012 Opinion. The Court will therefore disregard the handwritten label.

with other substantial evidence in the record. *See, e.g.*, *Johnston v. Colvin*, No. 13-CV-2710 VEC FM, 2015 WL 1266895, at *1 (S.D.N.Y. Mar. 18, 2015). But only physicians, psychologists, or "other acceptable medical source[s]" can be "treating sources" whose opinions may be entitled to controlling weight. 20 C.F.R. § 404.1502; SSR 06-03p. Social workers and nurse practitioners are not considered "acceptable medical sources." 20 C.F.R. §§ 404.1502, 404.1513(a), 404.1513(d). Therefore, the November 2012 Opinion is not entitled to controlling weight.

Plaintiff also argues that the ALJ erred because "[a] review of the clinic notes from January 2012 to November 2012 will show notations of [Plaintiff's] mental health decompensation." ECF No. 6, at 12. The treatment notes in the record do reflect the fact that Plaintiff's mental impairments have hampered his ability to function. But the ALJ merely found that Plaintiff's conditions caused mild to moderate functional limitations, rather than the extreme or marked limitations indicated in the November 2012 Opinion. Tr. 24. There is ample evidence in the record to support the ALJ's conclusion.

For example, O'Neill's treatment notes from May 4, 2012 indicate that Plaintiff's depression was "more mild than moderate." Tr. 327. On June 15, 2012, O'Neill indicated improvement in Plaintiff's depression and paranoia, and noted an increased ability to tolerate everyday events. Tr. 333. On July 27, 2012, O'Neill indicated that Plaintiff's hallucinations were mitigated and that Plaintiff's mental status examinations were normal. Tr. 349. On September 7, 2012, O'Neill described Plaintiff as "relatively symptom free." Tr. 352.

On October 4, 2012, one month before the November 2012 Opinion, O'Neill met with Plaintiff and filled out a Medication Clinic Individualized Plan & Update form. Tr. 388. On that form, O'Neill described Plaintiff's depression as "moderate" and indicated that he is able to recognize warning signs of decompensation and manage his symptoms. *Id.* O'Neill also

indicated a Global Assessment of Functioning ("GAF") score of 55 for Plaintiff, which indicates "moderate symptoms." *Id.*; *See Zabala v. Astrue*, 595 F.3d 402, 405-406 (2d Cir. 2010) (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM–IV"), at 34 (4th ed. rev.2000)).

Joann Streb, N.P., who met with Plaintiff regularly in order to review Plaintiff's medications, gave Plaintiff a GAF score five times after Plaintiff's onset date. Each time the score indicated only moderate symptoms. *See* Tr. 312, 319, 330, 334, 353.

Because there is substantial evidence in the record to support the ALJ's conclusion, Plaintiff's arguments regarding O'Neill's November 2012 Opinion are unavailing.

### b) Dr. Donahue

Dr. Donahue was Plaintiff's physician during the relevant time period, and referred Plaintiff to see O'Neill and Streb at Genesee Mental Health. Although Dr. Donahue does not provide a medical opinion as to Plaintiff's ability to work, she does provide some statements in her notes regarding the progress of Plaintiff's mental health treatment.

Plaintiff notes that "Dr. Donahue's records are either devoid of an opinion regarding [Plaintiff's] mental health status or reflect only 'fair' or 'sub-optimal control' of these impairments, despite treatment from Genesee Mental Health and with medication compliance." ECF No. 6, at 12-13. But again, the ALJ did account for the fact that Plaintiff's impairments were not fully under control when she determined Plaintiff's RFC. After considering the record as a whole, including the statements in Dr. Donahue's notes, the ALJ concluded that Plaintiff could only function in a position with no production or pace work, no interaction with the public, only occasional interaction with co-workers, low stress environment, and only occasional decision-making. Tr. 20. The ALJ also found that Plaintiff requires reminders of work tasks up to one time per day and must be able to remain off-task up to 10 percent of the workweek due to

unexpected breaks caused by Crohn's disease. *Id.* Plaintiff fails to explain how the ALJ erred in taking into account or evaluating the statements in Dr. Donahue's treatment notes.

### c) Dr. Dubro

Dr. Dubro evaluated Plaintiff at the Commissioner's request on January 4, 2012. Tr. 264-68. The ALJ assigned "great weight" to Dr. Dubro's report, in which Dr. Dubro opined that Plaintiff suffers from a mood disorder which causes him mild to moderate limitations but that his impairments "do not significantly interfere with [Plaintiff's] ability to function on a daily basis." Tr. 24, 264-68.

In a one-sentence argument, Plaintiff asserts that "the one-time consultative examination should be afforded little weight in light of the brevity of those evaluations as well as the lack of access to ongoing treating records that were before the ALJ at time of hearing." ECF No. 6, at 13.

To the extent Plaintiff is raising a general objection to the use of consultative examiners, such argument is foreclosed by case law and by the Social Security Administration regulations. *See Lewis v. Colvin*, No. 3:13-CV-1364, 2015 WL 4993681, at *5 (N.D.N.Y. Aug. 21, 2015); *Delgrosso v. Colvin*, No. 3:13-CV-1470 GTS/ESH, 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); 20 C.F.R. §§ 404.1527(e), 404.1513(c), 404.1512(b)(1)(viii), 416.927(e), 416.913(c), and 416.912(b)(1)(viii).

Plaintiff also seems to indicate that Dr. Dubro did not have access to certain records that were before the ALJ at the time of the hearing. However, Plaintiff fails to specify what records Dr. Dubro lacked or why they would be relevant to Dr. Dubro's examination of Plaintiff.

8

## 2. Credibility Determination

Plaintiff's second challenge to the ALJ's decision is that the ALJ erred in evaluating Plaintiff's subjective complaints and determining Plaintiff's credibility. ECF No. 6, at 13. Specifically, Plaintiff argues that the ALJ made only a conclusory credibility finding and failed to consider the factors set forth in SSR 96-7p and 20 C.F.R. § 404.1529. *Id.*

Both SSR 96-7p and 20 C.F.R. § 404.1529 list seven factors for the ALJ to consider when evaluating a claimant's symptoms: (1) daily activities performed by the claimant; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, the claimant has received; (6) any measures, other than treatment, the claimant uses to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations due to the symptoms. *See* SSR 96-7p; 20 C.F.R. § 404.1529(c)(3). When the ALJ makes a credibility determination, boilerplate language asserting that "the individual's allegations have been considered" or that "the allegations are not credible" is insufficient. SSR 96-7p. The decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Here, Plaintiff testified that he experiences anxiety, depression, and paranoia, but that adjustments to his medication have improved his symptoms. Tr. 32-58. Plaintiff also testified to physical symptoms including asthma, back pain, and repeated bathroom trips due to Crohn's disease. *Id.* With respect to the asthma, Plaintiff testified that he takes medication and is able to go up and down stairs but experiences shortness of breath when he does so. Tr. 45. With respect to back pain, Plaintiff testified that his medication has helped and that the pain is "pretty much in

9

remission right now." Tr. 44. Plaintiff reported that standing in one spot, like in a grocery line, causes more pain, but he is able to lift groceries and can help the pain of standing by leaning on something. Tr. 44-45. With respect to his Crohn's disease, Plaintiff testified that he sometimes has accidents and cramping but that he has not had an accident while he is out. Tr. 46. He reported that he has these symptoms about four times a week, but had not been to see a gastroenterologist in a while and could not remember the last time he had been to one. *Id.*

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms Plaintiff reported, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms "are not entirely credible." Tr. 21. In support of this credibility determination, the ALJ noted that Plaintiff's physical symptoms "appear to be controlled via medication management when [Plaintiff] is compliant with prescribed treatment." Tr. 23. This observation is supported by substantial evidence in the record as well as Plaintiff's own testimony that medication rendered his back pain "pretty much in remission." The ALJ further noted that although Plaintiff does suffer from a muscle spasm, Plaintiff was suggested physical therapy as a form of treatment "[r]ather than being restricted from activity due to his complaints." *Id.* With respect to Plaintiff's mental health conditions, the ALJ considered Plaintiff's symptoms as described in his treatment notes and concluded that "[Plaintiff's] treatment, consisting primarily of therapy and medication management, has been partially effective in controlling the frequency and severity of his conditions." Tr. 24. Again, this observation is supported by substantial evidence in the record as well as Plaintiff's testimony that his medication has helped him with his paranoia and depression. Tr. 51-52. Contrary to Plaintiff's characterization, the ALJ provided specific reasons for the weight given to Plaintiff's statements and did not violate SSR 96-7p or 20 C.F.R. § 404.1529 in determining Plaintiff's credibility.

### 3. Hypothetical Questions

Plaintiff's third challenge to the ALJ's decision is that the ALJ "failed to pose correct and complete hypothetical questions to the [Vocational Expert] and failed to take the proper opinion." ECF No. 6, at 16-18.

At steps four and five of the disability determination, an ALJ is justified in relying on a vocational expert's response to a hypothetical question so long as the assumptions in the hypothetical question are supported by substantial evidence. *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir. 1983)); *Cobbins v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 126, 136 (N.D.N.Y. 2012). A vocational expert's response to an incomplete or otherwise inadequate hypothetical question, on the other hand, cannot constitute substantial evidence to support a denial of benefits. *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002); *Karabinas v. Colvin*, 16 F. Supp. 3d 206, 216 (W.D.N.Y. 2014).

Here, the ALJ asked the Vocational Expert whether, given Plaintiff's age, education, and vocational profile, Plaintiff would be able to transition to other work if he was restricted to light exertion and had the following non-exertional limitations: no production or pace work, no interaction with the public, only occasional interaction with coworkers, needs to be in a low stress environment, only occasional decision-making, needs to be reminded of tasks up to one time per day, and could be off task up to 10 percent of the workweek due to unexpected breaks caused by Crohn's disease. Tr. 55. This hypothetical accounted for every limitation included in the ALJ's RFC determination, *see* Tr. 20, and the Vocational Expert answered that Plaintiff could not perform past relevant work but could transition to other work. Tr. 55-56.

At the same hearing, Plaintiff's representative asked the Vocational Expert whether Plaintiff could still transition to other work if, in addition to the limitations in the ALJ's

hypothetical, Plaintiff would be absent from work at least two days a month or if Plaintiff would be off task 25 percent of the day rather than 10 percent. Tr. 56-57. To both of these hypothetical questions posed by Plaintiff's representative, the Vocational Expert answered that Plaintiff could not work. *Id.*

Plaintiff argues that because the ALJ "failed to accept these opinions or give reason in her decision why those opinions were disregarded especially when supported by the substantial evidence in the case," the ALJ's decision must be remanded. ECF No. 6, at 17. In other words, Plaintiff is arguing that the ALJ erred by not accepting additional limitations into Plaintiff's RFC (namely, that Plaintiff must be able to be absent from work two days a month and that Plaintiff must be able to be off task 25 percent of the day rather than 10 percent) for which there was substantial evidence. However, Plaintiff does not point to any evidence in the record to support either of these additional limitations. Furthermore, and most importantly, Plaintiff's argument rests on a mischaracterization of the legal question at hand. The relevant legal question is whether the assumptions *in the ALJ's hypothetical* are supported by substantial evidence in the record, not whether there are other assumptions (not included in the ALJ's hypothetical) which also might be supported by substantial evidence in the record. Where substantial evidence exists for both sides, the ALJ's decision must be affirmed. *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998).

Even if the Court accepts for the sake of argument, therefore, that substantial evidence in the record supports the additional limitations that Plaintiff asserts, the question remains whether substantial evidence also supports the absence of these limitations. Dr. Donahue, Plaintiff's physician, appears to have assessed Plaintiff's Crohn's disease six times following the July 21, 2011 onset date. Tr. 400, 383, 378, 374, 369, 364. Each time Dr. Donahue assessed Plaintiff's Crohn's disease, she opined that it was either under "fair control," "stable," or "well controlled."

*Id.* The most negative assessment was on November 25, 2012, where Dr. Donahue opined that the disease was under "fair control." Tr. 364. Dr. Donahue also notes that Plaintiff was last seen by a gastroenterologist in April of 2011, and was supposed to return eight weeks thereafter but never came back. *Id.* The plan outlined by Dr. Donahue on November 25, 2012 is to "please continue medication regularly" and to follow up with a gastroenterologist. *Id.* Given that evidence, the ALJ was justified in concluding that Crohn's disease would cause Plaintiff to be off task for no more than 10 percent of the workweek and that Plaintiff would not need to miss two days of work a month.

Because there is substantial evidence in the record to support the ALJ's RFC determination, and the ALJ's own hypothetical accounted for every limitation in the RFC, the ALJ was entitled to rely on the Vocational Expert's response to that hypothetical and was not required to accept the Vocational Expert's response to the hypothetical posed by Plaintiff's representative.

## CONCLUSION

For the reasons stated above, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 7) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 6) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: January 12, 2016
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court